IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-00696-FDW
(3:09-cr-00032-FDW-DSC-1)

| | | |
|---|---|---|
| GLORIA JEAN GLISSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court on consideration of the Petitioner's pro se motion to vacate, set aside or correct sentence, which is filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, Petitioner's motion to vacate will denied and dismissed.

I. BACKGROUND

Petitioner and two co-defendants named Kimberly Grace Reid and Roneca Charnee White were charged by the Grand Jury in this District with one count conspiracy to commit offenses against the United States (Bank Fraud), in violation of 18 U.S.C. § 371 (Count One); and one count of bank fraud and aiding abetting, in violation of 18 U.S.C. §§ 1344 and 2 (Count Two). Petitioner and Roneca White were charged with a second count of bank fraud (Count Three), and Petitioner was named as the sole defendant with another count of bank fraud (Count Four), and also charged with one count of receipt of stolen securities which had crossed a state boundary and aiding and abetting, in violation of 18 U.S.C. §§ 2315 and 2 (Count Five).

In support of these charges, the indictment provided specific allegations the defendants participated in a scheme to deposit stolen checks into checking accounts and then later withdraw

1

the funds as cash, cashier's checks or through wire transfers with the intent to defraud Sun Trust Bank (formerly Carolina Central Bank) in Mecklenburg County, and Wells Fargo Home Mortgage in Fort Mill, South Carolina.

For example, the indictment alleged that Defendant Reid filed Articles of Incorporation with the North Carolina Secretary of State in order to obtain permission to operate a non-profit corporation call "Second Chance NC." After the non-profit was formed, Petitioner, who was listed as corporate treasurer, and Ms. Reid, who was listed as president, opened up a business checking account with Sun Trust Bank in the name of Second Chance NC. Ms. Reid later deposited a stolen check in the amount of $349, 203.27 into the account and Petitioner and Ms. Reid made withdrawals from the account by writing checks to themselves and others. Defendant White was reportedly the teller involved in all but two of these transactions.

The indictment further alleged that on September 16, 2004, Petitioner secured a license from Mecklenburg County to operate a business entitled "OTX". That same day, Petitioner opened a business checking account called "OTX Enterprise" with Sun Trust Bank and Petitioner then deposited a stolen check into the account dated September 7, 2004, in the amount of $545,074.98, and later made withdrawals through cashier or personal checks or wire transfers. The indictment alleged that Roneca White was working as a bank teller at Sun Trust at the time and assisted Petitioner in opening the OTX Enterprise account and in completing the withdrawals.

Kimberly Reid pled guilty to Count Two of her indictment and Roneca White pled guilty to Count One. Both Reid and White were awaiting sentencing when Petitioner proceeded to trial on all five counts in the indictment. Following a two-day trial, Petitioner was convicted by a jury on all charges in the indictment and her case was referred to the U.S. Probation Office for

preparation of a presentence report (PSR). The probation officer found a base offense level of 7 for the bank fraud convictions and increased by 14 levels because the intended losses involved in the scheme to defraud exceeded $400,000. A two-level increase was applied because Petitioner's conduct in befriending a bank teller that later assisted her in opening a bank account and depositing the stolen checks was accomplished by sophisticated means. A three-level increase was applied based on Petitioner's role as a manager/supervisor in the scheme. Finally, a two-level increase was applied because Petitioner willfully obstructed justice when she fled to South Carolina while having the benefit of pretrial release, failed to appear for a court-ordered mental health examination, and failed to appear for a court hearing. Based on a total offense level of 28 and a criminal history category I, Petitioner's Guidelines range was 78 to 97 months' imprisonment.

During her sentencing hearing, Petitioner's counsel moved for a downward departure from the Guidelines range based on her long history of depression and post-traumatic stress disorder, her positive family history, a limited IQ which counsel argued was demonstrated by mental health evaluations administered during the criminal proceedings, and physical ailments. The Court denied the motion for departure after noting that although Petitioner may suffer from depression, post-traumatic stress, and physical ailments, these issues did not rise to a sufficiently serious level to support a departure.

Petitioner's counsel also moved for a variance under 18 U.S.C. § 3553 citing many of the same reasons as proffered in support of a departure. The Court likewise rejected this effort after noting Petitioner's long history of passing worthless checks and the fact that she was a leader in the scheme to defraud the financial institutions in this case. The Court also observed that Petitioner provided notably false testimony when she testified under oath during her sentencing

hearing. Finding that a sentence at the high-end of Guidelines was warranted by her conduct, the Court sentenced Petitioner to 97-months' imprisonment and Petitioner was ordered to make restitution to Sun Trust Bank in the amount of $347,173.53 to be paid jointly and severally with her co-defendants and any others that may later be convicted of participation in the offense conduct. (3:09-cr-00032, Doc. No. 127: Judgment). Petitioner appealed.

In her sole claim on appeal, Petitioner contended that this Court erred in denying her motion for a downward departure or a variance. The Circuit Court found that her challenge to the denial of a motion for a downward departure from the Guidelines range was not subject to appellate review. See United States v. Glisson, 491 Fed. App'x 403, 404 (4th Cir. 2012) (unpublished) (citing United States v. Carr, 271 F.3d 172, 176 (4th Cir. 2011)). The Court went on to note that a claim that the court erred in denying a variance was subject to review, but the Court found no error and affirmed her sentence.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

A. Ineffective Assistance of Counsel

In this § 2255 proceeding, Petitioner raises a claim of ineffective assistance of counsel and two other claims that will be discussed herein.

4

The Sixth Amendment to the United States Constitution provides that all defendants charged with a crime have the right to effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on a claim of ineffective assistance of counsel bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v.

Fretwell, 506 U.S. 364, 369 (1993)).

Petitioner contends that her trial counsel failed to diligently prepare for trial which resulted in a violation of her right to a speedy trial as provided for in 18 U.S.C. § 3161. (3:13-cv-696, Doc. No. 2 at 4). In general, the Speedy Trial Act provides that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant in an information or indictment with the commission of an offense shall commence within seventy days" from the filing of the indictment or from the date of the first appearance of the defendant, whichever event may occur later. Id. § 3161(c)(1). This date is not entirely firm however because the 70-day time limit may be tolled in appropriate circumstances.

Petitioner was indicted on February 18, 2009, and made her first appearance on March 6, 2009, but her trial did not commence until September 14, 2010. Had there been no excludable time, Petitioner should have gone to trial by Friday, May 15, 2009. Petitioner's claim here must fail though because each of the continuances in her case were excludable under the Speedy Trial Act.

Petitioner's first continuance was filed on May 3, 2009, which was the day before her scheduled trial. Petitioner's counsel asserted that he had not yet obtained discovery and he was therefore in no position to properly advise her regarding the strength of the Government's evidence or to engage in productive plea negotiations. (3:09-cr-00032, Doc. No. 19).[1] The Court granted the motion under § 3161(h)(7)(iv) because Petitioner's counsel needed time to review the discovery and evaluate the strength of the Government's case. Petitioner's trial was then set for the July 2, 2009 term. Counsel again moved for a continuance prior to trial under §

---

[1] As the Government notes, Petitioner's counsel repeatedly provides the erroneous citation of § 3161(h)(8)(B)(iv) in his continuance motions but it is clear that he is seeking to proceed under § 3161(h)(7)(B)(iv).

3161(h)(7)(B)(iv), this time contending that he only recently received a plea offer and he had not had sufficient time to discuss the offer with Petitioner. (Id., Doc. No. 25). This motion was granted and the trial was continued to September 8, 2009.

In the interim for the new trial date, Petitioner's counsel filed a motion for status of counsel and asserted, among other compelling reasons, that despite his repeated efforts to prepare Petitioner's case, Petitioner had "consistently and repeatedly failed to cooperate" with him by refusing to return his calls or meet with him and had continually delayed his ability to access medical records and other important information. (Id., Doc. No. 29). During an Inquiry into Status of Counsel hearing, U.S. Magistrate David Keesler questioned Petitioner regarding her lack of cooperation. Petitioner stated that she would agree to work with counsel going forward in order to prepare for the upcoming September 2009 trial. See (Minute Entry, filed Aug. 21, 2009). After this status of counsel hearing, Petitioner's counsel filed three ex parte motions: one to appoint an investigator, the second to appoint a psychologist to evaluate Petitioner for possible mental health issues, and the third for the appointment of a documents examiner to review the voluminous discovery. Each of these motions was granted. On September 1, 2009, roughly a week before trial, Petitioner's counsel filed a motion to continue under § 3161(h)(7)(B)(iv) so that Petitioner could submit to a psychological evaluation. The Government did not object and the motion was granted based on the ends of justice and the trial was continued to the January 4, 2010, term of court. (Id., Doc. No. 40: Sealed Order).

On October 14, 2009, the Government made an oral motion for a bench warrant for Petitioner's arrest for failing to appear at a second Inquiry into Status of Counsel hearing and the motion was granted. On December 2, 2009, Petitioner was arrested in South Carolina by the U.S. Marshals Service at her sister's home. The Government then filed a motion to revoke Petitioner's

7

bond and have her detained pursuant to 18 U.S.C. § 3142 based on Petitioner's demonstrated flight risk and on the fact that she failed to self-report to a Bureau of Prisons facility for her mental evaluation which was scheduled for October 15, 2009. Following a hearing on December 18th, Judge Kessler entered an order detaining Petitioner and specifically found that Petitioner posed a flight risk and obstructed the U.S. Marshals when they attempted to arrest her in South Carolina. (Id., Doc. No. 58: Order).

Petitioner next filed a motion to continue the case from the January 4, 2010 term under § 3161(h)(7)(B)(iv) because Petitioner would be presenting a mental health defense and a mental health evaluation of Petitioner had already been scheduled by the defense and the Government. (Id., Doc. No. 61). The Court granted the motion for the reasons stated in the motion and based on the ends of justice and the trial was carried over to the May 3, 2010 term. The case was then continued to the July 6, 2010 term on Petitioner's motion because her psychological evaluation was not yet completed and she was scheduled for a competency hearing on May 11, 2010, before U.S. Magistrate Judge David Cayer. Following the hearing, Judge Cayer found Petitioner competent to stand trial.

Prior to this July term, the parties filed a joint motion and a joint motion for reconsideration of the denial of the initial motion to continue filed on June 28, 2010. In their joint motion, the parties noted that Petitioner had only recently been found competent to stand trial and that further mental evaluation was likely in an effort to bolster the mental health defense and that there was substantial evidence to prepare in support of the bank fraud charges. The Court granted the joint motion to continue on this basis and based on the ends of justice and

Petitioner's case commenced with jury selection on September 13, 2010.[2]

As this review of the case demonstrates, this case was continued based on her counsel's need for discovery, Petitioner's need for psychological evaluations in her effort to present a defense at trial, and to ensure that she was competent to stand trial. In other words, the delays were attributable to Petitioner and the delays were properly excluded under the Speedy Trial Act In sum, Petitioner's contention that "unconscionable continuances" present a "major concern" does not alert this Court to any right to Strickland relief because she has failed to demonstrate deficient performance or prejudice.

B.  Alleyne v. United States

Petitioner next contends that she is entitled to sentencing relief based on the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013). (3:13-cv-00696, Doc. No. 2 at 4).

In Alleyne, the defendant was charged with robbery affecting interstate commerce, among other offenses, in violation of 18 U.S.C. 1951(a), and using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).[3] The jury later convicted Alleyne of the charged offenses. The probation officer prepared a presentence report in advance of Alleyne's sentencing hearing and therein recommended a seven-year sentence based on a finding that he brandished the firearm during the robbery. Defendant objected on the ground that the jury verdict form made it plain that they did not find beyond a reasonable doubt that he brandished the firearm during a crime of violence. The sentencing court overruled Petitioner's

---

[2] The Court conditionally denied the continuance based an inadequate explanation in support of the continuance. The parties filed a joint motion for reconsideration and provided additional detail and the Court granted the motion.
[3] Section 924(c)(1)(A) provides for a term of five years upon conviction which may be increased to seven years if the defendant brandished the firearm during the underlying offense, and increased to ten years if the firearm was discharged during the commission of the offense.

9

objection after concluding that whether he brandished the firearm was a question of fact to be resolved by the court in determining the applicable enhancements under the Guidelines, citing Harris v. United States, 536 U.S. 545 (2002).

In Harris, the Court held that there was no Sixth Amendment violation of a right to a jury trial when a sentencing court found facts that increased the defendant's mandatory minimum sentence for a crime. Alleyne, 133 S. Ct. at 2155. In overruling Harris, the Alleyne Court found that the Sixth Amendment right to a jury trial was violated because "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Id.

Petitioner's argument here is misplaced as she was not convicted of an offense that carried a mandatory minimum sentence.[4] Rather, Petitioner's enhancements only served to increase the Guidelines range and the application of the sentencing guidelines is a question of fact to be resolved by the sentencing court and not the jury. Moreover, even if Alleyne were relevant to Petitioner's case, as countless courts have noted, the Alleyne holding has not been made retroactive to cases on collateral review. See Jeanty v. Warden, FCI-Miami, 757 F.3d 1283, 1285-86 (11th Cir. 2014) (citing United States v. Winkelman, 746 F.3d 134, 136 (3d Cir. 2014); In re Kemper 735 F.3d 211, 212 (5th Cir. 2013); Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2014). See also United States v. Stewart, 540 Fed. App'x 171, 172 n.* (4th Cir. 2013) (per curiam) (unpublished) (noting that Alleyne has not be made retroactive to cases on collateral review).

---

[4] Petitioner was subject to a term of no more than thirty years upon conviction on Counts One through Four pursuant to 18 U.S.C. §§ 1344 and 2. For Count Five, Petitioner faced no more than 10 years imprisonment under 18 U.S.C. §§ 2315 and 2.

C. Ex Post Facto

In her final claim for relief, Petitioner contends that the Ex Post Facto Clause of the United States Constitution was violated because the Guidelines Manual that was in effect at the time of her sentencing exposed her to a 14-level increase. Petitioner argues that the Guidelines Manual that was in effect at the time of the offense conduct would have subjected her to a lower sentencing range, presumably because it provided for less of an increase in her base offense level. (3:13-cv-00696, Doc. No. 2 at 4).

The probation officer applied the 2010 version of the Guidelines Manual which provided for a 14-level increase in the base offense level under USSG 2B1.1(b)(1)(H) because the amount of loss caused by the offense conduct exceeded $400,000. (3:09-cr-00032, Doc. No. 97: PSR ¶ 26). Petitioner was sentenced on March 12, 2012, for conduct which the indictment alleged occurred in 2004, however a 14-level increase still would have applied even if the 2003 or 2004 version of the manual were applicable.

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner has failed to state a claim for relief and her § 2255 motion will be denied and dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's § 2255 motion is **DENIED** and **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: May 15, 2015

Frank D. Whitney
Chief United States District Judge